**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 12-05672-JW |
| | Chapter 13 |
| Duane Thomas Randall, | **ORDER DENYING MOTION FOR** |
| Debtor(s). | **RELIEF FROM STAY** |

This matter comes before the Court on the Amended Motion for Relief from Stay ("Motion") filed by Annie Y. Randall on August 22, 2013. Duane Thomas Randall ("Debtor") timely objected to the Motion and a hearing was held. Pursuant to Fed. R. Civ. P. 52, which is made applicable to these proceedings by Fed. R. Bankr. P. 7052 and 9014(c), and based upon the pleadings and testimony presented at the hearing, the Court makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

1. Debtor and Ms. Randall were previously married, but were divorced by final order of divorce entered on May 14, 2012 ("Family Court Order").

2. The Family Court Order provides that Debtor will retain possession of certain jointly titled items, including the marital residence in Hopkins, SC, a Chevrolet truck, a camper, a tractor, and a boat and motor. Paragraph 7 of the Family Court Order, which addresses the equitable apportionment of the marital assets, further provides that "The [Debtor] shall cause to be refinanced or sold within 60 days of the filing of this Order the assets that are jointly titled. In the meantime, the [Debtor] shall hold harmless and indemnify [Ms. Randall] for all of the indebtedness that is jointly titled."

1

3. The Family Court Order also requires Debtor to pay Ms. Randall monthly alimony and to execute a Qualified Domestic Relations Order ("QDRO") to transfer a portion of Debtor's retirement to Ms. Randall as part of the equitable apportionment of the marital assets.

4. Debtor filed an appeal of the Family Court Order, which was dismissed by order filed on May 23, 2013 for failure to serve and file an initial brief and designation of matter as required by Rules 208 and 209 of the South Carolina Appellate Court Rules.

5. Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code on September 12, 2012.

6. Debtor filed his chapter 13 plan ("Plan") on September 12, 2012, which was confirmed by order entered December 6, 2012. The Plan provides for the retention of the jointly titled property and payment of the unrefinanced debts secured by that property. The Plan did not specifically mention Ms. Randall and therefore presumably treated her as a domestic support creditor and as an unsecured creditor. Ms. Randall received notice of the Plan but did not file an objection.

7. The deadline for creditors to file a proof of claim in Debtor's case was January 22, 2013. Ms. Randall did not file a proof of claim.

8. On June 25, 2013, Debtor filed an amended plan ("Amended Plan") in order to provide for the surrender of the boat and camper for disposition by the respective lien creditors and to provide for full payment (100%) of general unsecured claims. The Amended Plan provided for the retention of the remainder of the jointly titled property and payment of the unrefinanced debts secured by that property. Despite receiving notice of the Amended Plan, Ms. Randall did not file an objection.

9. The Amended Plan was confirmed by order entered July 9, 2013. Ms. Randall did not appeal the confirmation order.

10. Ms. Randall testified that she has experienced credit problems since Debtor filed his bankruptcy case, and as a result, she has been unable to obtain financing for a new vehicle and has had to pay additional deposits to obtain utilities. She was also unable to obtain a mortgage to purchase a new home because her debt to income ratio was too high due to the outstanding joint debts on the property retained by Debtor.

11. Debtor testified that he is current on his plan payments, his mortgage payments, and his alimony payments to Ms. Randall. He further testified that he has made three attempts to refinance the mortgage on the residence to no avail because the residence is a modular home. Debtor's testimony and schedules indicate that the debts on the jointly titled property exceed the value of the property; therefore, an attempt to sell the property would be futile.

12. As of the date of the hearing, Debtor had not executed the QDRO to transfer a portion of his retirement to Ms. Randall in compliance with the Family Court Order. At the hearing, Ms. Randall raised Debtor's failure to execute the QDRO in connection with her arguments regarding the Motion, although this was not a ground for relief identified in the Motion. Debtor claimed minor issues regarding the language of the QDRO, but agreed at the hearing to complete the process.

13. On October 21, 2013, counsel for the Debtor advised chambers that Debtor had signed the QDRO and was returning it to counsel for Ms. Randall. Thereafter, the parties advised chambers that the QDRO had not in fact been signed and that Debtor had taken the QDRO to his family court lawyer for revisions.[1]

---

[1] In order to allow the parties to substantively address the QDRO, the Court will schedule a hearing to consider the Motion as it relates to this issue by separate order.

3

## CONCLUSIONS OF LAW

Ms. Randall seeks relief from the automatic stay for cause pursuant to 11 U.S.C. § 362(d)(1), which provides that the Court shall grant relief "for cause, including the lack of adequate protection of an interest in property of such party in interest."[2] Under § 362(d)(1), a bankruptcy judge has "broad discretion to determine what constitutes 'cause' sufficient to warrant relief from stay." In re Breibart, C/A No. 03-07440-W, slip op. at 2 (Bankr. D.S.C. Feb. 17, 2004); see also Robbins v. Robbins (In re Robbins), 964 F.2d 342, 345 (4th Cir. 1992) (stating that "[b]ecause the Code provides no definition of what constitutes 'cause,' courts must determine when discretionary relief is appropriate on a case-by-case basis"). In Robbins, the Fourth Circuit stated that when determining whether to grant relief from stay for the purpose of litigating an issue in state court, a court must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied. 964 F.2d. at 345.

Ms. Randall argues that the damage to her credit score and her ability to get new credit as a result of Debtor's failure to refinance their joint debts or sell the jointly titled property in compliance with the Family Court Order constitutes cause for relief. She seeks an order lifting the automatic stay so that she may pursue relief from the Family Court, including contempt and even incarceration of Debtor, based upon Debtor's alleged failure to comply with its Order.

*1. The balancing of hardships weighs against Ms. Randall*

Considering the circumstances present in this case, the Court finds that the hardship to Debtor and the creditors in this case outweighs the hardship to Ms. Randall. The evidence presented was inconclusive that Ms. Randall's credit problems are solely caused by Debtor's

---

[2] Further references to the Bankruptcy Code will be by section number only.

failure to refinance the debts or would be solved by granting relief from stay.[3] Failure to timely pay a joint debt by either co-obligor is likely to cause credit reporting problems for both. Debtor testified that he has tried to perform his obligations under the Family Court Order by attempting to refinance the debts, but has been unable to find a lender willing to refinance. Furthermore, the evidence indicated that a sale of the jointly titled property at this time would likely be insufficient to pay the liens on such property, and thus would result in a deficiency for which both Debtor and Ms. Randall would continue to be liable. Debtor cannot force the mortgage creditors to accept a short sale of the property or new lenders to refinance the loans. There was no evidence presented that Debtor has a viable method to perform his obligation to refinance or sell at this time, and the Family Court Order did not appear to contemplate a situation where Debtor is unable to refinance or sell the property without a resulting deficiency.

Debtor's confirmed Amended Plan provides for the retention of the jointly titled property pursuant to § 1306(b) and payment *in full* to both his secured and unsecured creditors over a period of five years.[4] Ms. Randall did not object to the Plan or Amended Plan, despite having an opportunity to do so. The evidence indicates that Debtor is current on his plan payments, his payments to his mortgage creditors outside the plan, and his alimony payments to Ms. Randall. The evidence further indicates that Debtor's residence and Chevrolet truck are essential to his reorganization. If Debtor successfully completes his Amended Plan, the debts on the property will be fully paid (other than the long term loan on the residence, which would be current at the conclusion of the payments) and Ms. Randall's liability will be extinguished. If Ms. Randall were permitted to pursue contempt or specific performance in Family Court, the foreseeable result of this effort would either be the sale of the property at a deficiency or a contempt citation

---

[3] To the extent that Ms. Randall's credit report is inaccurate, Congress has provided a statutory framework through which she may dispute the inaccurate reporting. See 15 U.S.C. § 1681 *et seq* [the Fair Credit Reporting Act].

[4] Debtor has five general unsecured creditors whose timely filed claims total $24,417.93.

Case 12-05672-jw    Doc 47    Filed 11/05/13    Entered 11/05/13 16:00:56    Desc Main
                    Document      Page 6 of 11

resulting in Debtor's incarceration, which would likely cause an interruption of payment to his creditors and impair the success of his Amended Plan. Moreover and importantly, Ms. Randall is benefitted by the bankruptcy case, in that while the case is pending, she is protected from efforts to collect by the creditors on the joint debts by the co-debtor stay. See § 1301(a). Considering these factors, the balance of hardships favors Debtor.

    2. *In re Tanner is not persuasive*.

In support for her argument that the stay should be lifted, Ms. Randall relies on In re Tanner, C/A No. 03-12991, slip op. (Bankr. D.S.C. Jun. 21, 2004), an unpublished opinion issued by a former judge of this Court where the Court found that cause existed to grant a motion for relief from stay filed by the debtor's former spouse so that the former spouse could seek an order from the family court requiring specific performance of its order requiring the debtor to refinance within 90 days or sell their former marital home. The refinance or sale was required for the purpose of paying the former spouse $6,000 as his share of the equity in the residence. The debtor was further ordered to timely make the mortgage payments for so long as her former spouse's name was on the mortgage to protect his credit. The former spouse filed an objection to confirmation of the debtor's original plan, which was later withdrawn following the debtor's filing of an amended plan that provided for payment of the $6,000 in monthly payments over the life of the plan.

After the debtor failed to comply with her own confirmed plan by timely making her monthly mortgage payments to the holder of the first mortgage on the marital residence, the former spouse filed a motion for relief from stay. The court granted relief from stay finding that the family court directive for the debtor to refinance or sell was an order for specific performance and did not create a debt. The court found that the obligation to protect the former spouse's

credit contained in the family court order could not be satisfied through the debtor's chapter 13 plan. The court weighed the interest of the debtor and her estate against the hardship incurred by the former spouse and concluded that the former spouse could not be adequately protected during the life of the plan without compliance with the family court order and therefore found that cause existed to lift the stay.

This case is distinguishable from the facts of the <u>Tanner</u> case. In <u>Tanner</u>, the non-debtor spouse was an active participant throughout the duration of the debtor's bankruptcy case, both pre and post confirmation, and the Court granted relief only when the debtor failed to make post confirmation payments to the mortgage creditor pursuant to the debtor's plan, which was a requirement expressly relied upon by the spouse to settle an objection to confirmation. In this case, Ms. Randall did not file a proof of claim or an objection to confirmation. Furthermore, as of the date of the hearing, Debtor was current on his post-confirmation payments to his mortgage creditors, his plan payments, and his alimony payments to Ms. Randall. Ms. Randall's asserted grounds for relief from stay existed pre-confirmation and there are no new post confirmation grounds for relief. See <u>In re Morrow</u>, 495 B.R. 378, 391 (Bankr. N.D.Ill. 2013) (finding no cause to grant a post-confirmation stay relief motion where motion was based solely upon pre-confirmation conduct and creditor was bound by confirmed chapter 13 plan). Furthermore, unlike <u>Tanner</u>, the Family Court Order in this case did not expressly indicate that Debtor's obligation to sell or refinance was intended to protect Ms. Randall's good credit.[5]

Similar to the non-debtor spouse in <u>Tanner</u>, Ms. Randall argues that she does not have a claim because she simply seeks specific performance. However, in <u>Tanner</u>, the family court order did not include a hold harmless provision. In this case, the provision of the Family Court

---

[5] In <u>Tanner</u>, the family court order stated that "[r]egardless of whether [the debtor] refinances the home or places the home on the market, she shall make the monthly mortgage payments on the home in a timely manner for so long as [Mr. Tanner's] name is on the mortgage so as to protect [Mr. Tanner's] credit."

Order requiring Debtor to sell or refinance the jointly titled property is contained within the section of the order addressing the equitable apportionment of the assets. As a means of enforcing that obligation, the Family Court Order includes a requirement that Debtor hold Ms. Randall harmless for the debts on the jointly titled property. Debtor's failure to comply with the provision requiring him to sell or refinance the jointly titled property triggers the hold harmless clause, which would give rise to a right to payment on behalf of Ms. Randall and thus a claim.[6] See § 101(5)(B) (defining "claim" as "a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured, or unsecured"); see also In re Ward, 194 B.R. 703, 712 (Bankr. D. Mass. 1996) ("For an equitable remedy to be a claim, the definition requires only that the breach giving rise to the equitable remedy also give rise to a 'right' to payment. It imposes no requirement that the claimant exercise his right to payment or show an intent to exercise it.") There is authority to indicate that this claim may be dischargeable pursuant to § 1328(a)(2) since it arises out of the property settlement and there is no indication in the Family Court Order that the hold harmless provision was intended as alimony, maintenance, or support. See In re DeBerry, 429 B.R. 532 (Bankr. M.D.N.C. 2010) (finding that the debtor's hold harmless obligation with respect to obligations that were not specifically identified as payments the debtor was making in lieu of support was dischargeable in a chapter 13 case); In re Flood, C/A No. 10-06063-jw, slip op. (Bankr. D.S.C. Nov. 8, 2010) ("When an agreement contains a provision to hold an ex-spouse harmless in

---

[6] For this reason, this case is also distinguishable from Young v. Young, where the district court affirmed the bankruptcy court's decision to grant a motion to lift the automatic stay to allow the movant to pursue in state court the equitable remedy of recission of an agreement providing for the exchange of residential property on account of fraud. No: 1:06CV00781, 2007 WL 676689 (M.D.N.C. Feb. 28, 2007), *aff'd* 273 Fed. Appx. 220 (4th Cir. 2008). The debtors appealed the bankruptcy court's order modifying the automatic stay, arguing that the movant's failure to file a proof of claim barred the court from considering her motion for relief from the automatic stay. The district court disagreed, finding that the movant did not have a claim since the recission cause of action carried no right to a monetary payment and the movant affirmed that she would seek only non-monetary remedies.

8

Case 12-05672-jw    Doc 47    Filed 11/05/13    Entered 11/05/13 16:00:56    Desc Main
Document      Page 9 of 11

regards to payments which relate to the allocation of debt, courts have determined such obligations can be in the nature of alimony, maintenance and support if the agreement expressly states the obligation is in the nature [of] support.")  Ms. Randall cannot pursue her claim because, despite receiving notice of Debtor's bankruptcy case and the bar date for filing claims, she did not timely file a proof of claim and cannot now have an allowable claim.  The Court has no authority or discretion to allow a late filed claim in Chapter 13 cases over the objection of the chapter 13 trustee or the debtor.  In re Perkins, No. 10-03041-JW, 2011 WL 3163294, at 2 (Bankr. D.S.C. 2011).  Without an allowed claim, Ms. Randall lacks standing to seek modification of the confirmed plan.  See § 1329(a).

    3. *Ms. Randall's request for relief is barred by § 1327*

Even if the balancing of the hardships did not weigh against Ms. Randall, her request for relief is barred by § 1327(a), which provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."  Ms. Randall's asserted grounds for relief from stay existed pre-confirmation.  The Plan and the Amended Plan both provided for the retention of the jointly titled property and continued payments on those secured debts.  Ms. Randall could have filed a motion for relief from stay prior to confirmation or an objection to confirmation on the grounds that the Plan and Amended Plan contravened Debtor's obligation to sell or refinance that property under the Family Court Order.  This Court has previously stated that "[o]rdinarily, once a Chapter 13 plan has been confirmed, a creditor may not raise an issue that could have been raised by an objection to confirmation."  Pope v United Lending Corp. (In re Pope), C/A No. 93-71473, Adv. No. 97-80205, 1997 WL 33344310 (Bankr. D.S.C. Dec. 15, 1997); see also In re Davis, C/A No. 10-

9

02249, 2010 WL 5173187 (Bankr. D.S.C. Oct. 12, 2010) (finding that a creditor was bound to accept its treatment under the confirmed plan in the case since it failed to object to confirmation, despite having been provided notice of the plan and confirmation hearing, and failed to appeal the confirmation order).

However, an exception to this general rule has been recognized where the enforcement of an order binding a party would result in the denial of due process in violation of the Fifth Amendment to the United States Constitution, because the party did not receive adequate notice. See Piedmont Trust Bank v. Linkous (In re Linkous), 990 F.2d 160, 162 (4th Cir. 1993). "Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 272 (2010) (citations omitted). Ms. Randall does not dispute that she received notice of the Plan and the Amended Plan. Based on the evidence presented, the Court finds that notice to Ms. Randall of Debtor's bankruptcy case and Plan and Amended Plan was adequate. Despite notice, Ms. Randall failed to file a proof of claim in this case or an objection to confirmation. Where a party is notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate and thus the party is bound to the confirmation order. Id. at 272; see also Coulter v. Aplin (In re Coulter), 305 B.R. 748, 756 (Bankr. D.S.C. 2003) (citing In re Varat Enterprises, Inc., 81 F.3d 1310, 1315 (4th Cir. 1996)). Accordingly, because the confirmed plan provides for the retention of the jointly titled property and continued payment on those secured debts, the Court finds that § 1327 bars Ms. Randall from obtaining relief from stay to force Debtor to refinance or sell the property or face contempt.

**CONCLUSION**

Based on the foregoing, the Court concludes that Ms. Randall has failed to demonstrate that cause exists to grant relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1). Therefore, Ms. Randall's Motion for Relief from the Automatic Stay is denied.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**11/05/2013**



US Bankruptcy Judge
District of South Carolina

Entered: 11/05/2013

11